COLEMAN, BALOGH & SCOTT LLP
ETHAN A. BALOGH, No. 172224
JAY A. NELSON, No. 258431
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Phone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Defendant
ELIJAH COOPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIJAH COOPER,<br><br>Defendant. | Case No. 13 Cr. 693 SI<br><br>NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE OBTAINED BY PEN REGISTERS, TRAP AND TRACE DEVICES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Date: October 31, 2014<br>Time: 11:00 a.m.<br><br>Before the Honorable Susan Illston<br>United States District Judge |

TO: MELINDA HAAG, UNITED STATES ATTORNEY, and BENJAMIN TOLKOFF and WAI-SHUN "WILSON" LEUNG, ASSISTANT UNITED STATES ATTORNEYS

PLEASE TAKE NOTICE that on October 31, 2014, at 11:00 a.m., or as soon thereafter as he may be heard, defendant Elijah Cooper, by and through his counsel, will and does hereby move this Court for an Order suppressing the Government's receipt of information from Pen Registers and Trap and Trace Devices, including cell tower GPS information and other call information in violation of the Fourth Amendment.

////

////

**MOTION**

Elijah Cooper moves this Court pursuant to the Fourth Amendment to the United States Constitution and all other applicable case law and statutes for an Order suppressing the Government's warrantless receipt of pen register and trap and trace information, including cell tower GPS information and other call identifying information in violation of the Fourth Amendment. Mr. Cooper further moves for the Court to require the Government to produce any and all pen register applications and related Orders for review by the defense. The Government should also be required to disclose the number of pen register orders through which it received cell tower GPS coordinates and other call identifying information in the absence of a warrant, as this data will demonstrate the breadth of the Government's intentional violations of the Fourth Amendment, *viz.*, its lack of good faith.

This motion is based on the instant notice of motion and motion, the attached memorandum of points and authorities, the Declaration of Ethan A. Balogh Filed September 26, 2014, the pleadings and Orders on file in the Clerk's Record, and any and all other materials that may come to this Court's attention at the time of the hearing on this motion.

Respectfully submitted,

DATED: September 26, 2014            COLEMAN, BALOGH & SCOTT LLP

*/s/ E A Balogh*
By: ETHAN A. BALOGH
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Direct: (415) 391-0441

Attorneys for Defendant
ELIJAH COOPER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction and Background[1]

The Government has produced in discovery so-called "pen register" materials regarding mobile telephones it ascribes to Elijah Cooper and Anthony Knight.[2] These materials reflect the GPS coordinates of the cell tower accessed by the telephones' users at the beginning and end of each call.[3] *See* ECF No. 44 (Sealed Declaration of Ethan A. Balogh Filed June 6, 2014) ¶ 15. These materials also reflect whether each particular call was incoming or outgoing, whether it was answered or not, and the length of the call. *Id*. ¶ 16. Although the Government reports that the authorized electronic surveillance on the Cooper mobile commenced February 27, 2013 and extended at least through April 20, 2013, *see id*., other evidence suggests that the Government commenced unauthorized electronic surveillance of the Cooper mobile months earlier. *Id*. Ex. M, ¶ 103. Likewise, the Government reports that the authorized electronic surveillance of the Knight mobile commenced on August 17, 2012 and continued for at least seven months, *see id.*, Ex. H, ¶ 21, but other evidence suggests that the Government monitored the Knight mobile without authorization for at least two months before the Court authorized such surveillance. *Id*. ¶ 75.

The Government has declined Mr. Cooper's request to produce the applications and Orders authorizing its receipt of these materials. *Id*. ¶ 16. Nevertheless, the Government was aware that the telephone carrier who supplied the pen register materials would include GPS coordinates and other call identification information in its production, but the Government took

---

[1] Mr. Cooper's factual presentation is based on discovery produced by the United States. He reserves the right to supplement this showing upon discovery of additional facts, including from materials supplied by the Government.

[2] For convenience only, we refer to the telephones as the "Cooper mobile" and the "Knight mobile."

[3] We refer to the cell tower GPS coordinates provided to the Government, purportedly in response to the pen register Orders, as "GPS information" or "GPS coordinates." *See also* ECF No. 66 (Declaration from Metro PCS custodian confirming production of GPS information to the Government in response to a pen register and track and trace device installation Order).

1  no steps either to (1) obtain a search warrant to obtain this call data or (2) otherwise limit the
2  carrier's production to pen register information authorized for search and seizure by *Smith v.*
3  *Maryland*, 442 U.S. 735 (1979).[4]

## II. Argument

"To safeguard Fourth Amendment rights generally, the Supreme Court has crafted the exclusionary rule, requiring the exclusion of evidence when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013) (internal quotation, citation and alteration omitted). In this case, the Government was aware that when it obtained and served upon the communications carrier an Order to install pen register and trap and trace devices on Mr. Cooper's and Knight's telephones, the carrier would provide far more than the limited information authorized by the Supreme Court in *Smith*. More directly, the Government knew it would receive from telephone carriers—upon request—sensitive, private information including (1) the GPS coordinates regarding the nearest cell tower handling each call, as well as (a) the commencement and (b) termination of each call; (2) whether a call was incoming or outgoing; (3) whether the call was answered; and (4) the duration of the call. *See* ECF No. 44 ¶¶ 14-16; *see also* ECF No. 66. Mr. Cooper refers to this information collectively as "private call information." Despite knowing that it would obtain this private call information without authority—the pen register statute, 18 U.S.C. §§ 3121–3127, does not provide for the receipt of this private call information—the Government nonetheless sought and obtained that very information.

The Government's misuse of the pen register statute to obtain this private call information violates the Fourth Amendment. But even if authorized by the pen register statute,

////

---

[4] In addition, Mr. Cooper contends that whatever the merits of the holding in *Smith*, changes in technology and privacy expectations over the intervening 35 years demonstrate that *Smith* should be revisited. To the extent the Court believes it is bound by *Smith* and that this case cannot be distinguished from *Smith*, Mr. Cooper preserves that issue for further review, as necessary.

the Government's pursuit and receipt of the private call information violates the Fourth Amendment, and requires suppression in any case.

**A.   The Government's search and seizure of private call information exceeds the constitutional limits of *Smith v. Maryland*.**

In *Smith*, the Supreme Court addressed the constitutionality of pen registers. There are a number of salient features of that decision for the Court to consider.

*First*, in finding the Government's use of pen registers constitutional in the absence of a warrant, the Court defined pen registers narrowly, and then based its analysis on that narrow definition. More directly, the Court held that:

> [a] pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electric impulses caused when the dial on the telephone is released. It does not overhear oral communications and *does not indicate whether the calls are actually completed*.

*Smith*, 442 U.S. at 737 & n.1, *quoting United States v. New York Tel. Co.*, 434 U.S. 159, 161 n.1 (1977) (emphases added). The Court emphasized this definition when it commenced its analysis under *Katz v. United States*, 389 U.S. 347 (1967):

> Indeed, a law enforcement official could not even determine from the use of a pen register whether a communication existed. These devices do not hear sound. They disclose only the telephone numbers that have been dialed—a means of establishing communication. *Neither the purport of any communication between the caller and the recipient of the call, their identities, nor whether the call was even completed is disclosed by pen registers.*

*Smith*, 442 U.S. at 741 *quoting New York Tel. Co.*, 434 U.S. at 159 (emphases added).

These limitations were critical to the Court's finding that pen registers did not involve a search worthy of Fourth Amendment protection. Or as put by the Court:

> Given a pen register's limited capabilities, therefore, petitioner's argument that its installation and use constituted a 'search' necessarily rests on a claim that he had a 'legitimate expectation of privacy' regarding the number he dialed on his phone.

*Smith*, 442 U.S. at 742. The Court found that he did not, "doubt[ing] that people in general entertain any actual expectation of privacy in the numbers they dial." *Id*. The Court then went further, and held that even if petitioner expected "that the numbers he dialed would remain private," and held such a belief, it wasn't one "that society is prepared to recognize as

1 reasonable." *Id.*, *quoting Katz*, 389 U.S. at 361 (internal marks omitted).[5] The Court based this latter determination on case law asserting that a person has "no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith*, 442 U.S. at 744.

As should be plain, *Smith* does not condone the Government's search and seizure of the private call information collected in this case. When Mr. Cooper received a telephone call on a mobile device, he cannot be said to have "voluntarily conveyed numerical information to the telephone company and exposed that information to its equipment in the ordinary course of business." Nor did he have any reason to understand that GPS coordinates regarding his calls were recorded at all, much less would be provided to third parties. In other words, the Government's search and seizure of the private call information constitutes a search under the Fourth Amendment. Because the Government obtained this evidence in the absence of a warrant, the Court should find a Fourth Amendment violation and should suppress the fruits of these illegal searches.

Finally, Mr. Cooper notes that following his initial filing raising this same issue, *see* ECF No. 38, the Eleventh Circuit held as Mr. Cooper urges here, *viz.*, that *Smith* did not contemplate that the Government could obtain cell tower location information in the absence of a warrant, that this information is protected by the Fourth Amendment, and that the Government must obtain a warrant to obtain such protected information. *United States v. Davis*, 754 F.3d 1025 (11th Cir. 2014). In addition, *Davis* thoroughly catalogued circuit and Supreme Court case law on the privacy issues raised by the Government's seizure of GPS information, including an extended assessment of the Supreme Court's recent case *United States v. Jones*, 132 S.Ct. 945

---

[5]Whatever merits existed regarding the Court's 1979 assessment of the citizenry's subjective and objective expectations of privacy regarding the privacy of telephone calls they make, privacy expectations have evolved considerably during the intervening 36 years. The public's response to Edward Snowden's revelations, the California Attorney General's May 2013 announcement of new web privacy guidelines, and the recent lobbying of United States Congress for stricter privacy laws, stand as but a few easy examples of Americans' increased manifestation of privacy rights in the internet era. *See also Klayman v. Obama*, Case No. 13 Cv. 851 RJL (D.D.C.), Dkt. No. 48 (granting preliminary injunction halting Government's bulk collection and querying of phone metadata).

1  (2012), to support its conclusion that the Fourth Amendment protects the GPS information and
2  that "the [G]overnment's warrantless gathering of his cell cite location information violated his
3  reasonable expectation of privacy." 754 F.3d at 1210-15.  Moreover, *Davis* noted that while the
4  "gathering of cell site location information is factually distinguishable from the GPS data at issue
5  in *Jones*[,]" the Court held that "the distinctions operate against the [G]overnment's case rather
6  than in favor of it." *Id*. at 1215.  That is true, the Court held, because *Jones* addressed privacy
7  concerns at issue only where a person is on the public highways, whereas the GPS data from cell
8  tower locations extended to a person's whereabouts when he/she is *not* in pubic. *Id*. at 1215-16.
9        The Court also should note as well that earlier this month, the Eleventh Circuit voted to
10 rehear *Davis* en banc, *see* 2014 WL 4358411, and thus *Davis* no longer has precedential value.
11 Nevertheless, Mr. Cooper contends that the panel opinion, authored by noted District of
12 Columbia Circuit Judge David B. Sentelle, is thorough, careful and persuasive on the question of
13 whether the Government's receipt of this type of private call data requires a warrant.  Under the
14 Fourth Amendment, it does.
15       For these reasons and each of them, the Court should suppress the Government's
16 warrantless seizure of private call information, including the GPS information obtained by the
17 pen registers in this case.

18                                                           Respectfully submitted,
19 DATED: September 26, 2014                                 COLEMAN, BALOGH & SCOTT LLP
20
21                                                           */s/ E A Balogh*
                                                             By: ETHAN A. BALOGH
22                                                           235 Montgomery Street, Suite 1070
                                                             San Francisco, CA 94104
23                                                           Direct: (415) 391-0441

24                                                           Attorneys for Defendant
                                                             ELIJAH COOPER
25
26
27
28

## **PROOF OF SERVICE**

I, Ethan A. Balogh, certify that on September 26, 2014, I served all parties in this matter by causing the preceding pleading to be filed electronically, as set forth by Local Rule 5-1.

Dated: September 26, 2014             */s/ E A Balogh*
                                      ETHAN A. BALOGH