1  COLEMAN, BALOGH & SCOTT LLP
   ETHAN A. BALOGH, No. 172224
2  EVAN C. GREENBERG, No. 271356
   235 Montgomery Street, Suite 1070
3  San Francisco, CA 94104
   Phone: 415.391.0440
4  Facsimile: 415.373.3901
   eab@colemanbalogh.com
5
   Attorneys for Defendant
6  ELIJAH COOPER

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12 | UNITED STATES OF AMERICA,  | Case No. 13 Cr. 693 SI
13 |         Plaintiff,         | DEFENDANT ELIJAH COOPER'S OMNIBUS REPLY BRIEF IN RESPONSE TO ECF NOS. 79-81
14 |                            |
15 |    v.                      | Date:   November 12, 2014
16 | ELIJAH COOPER,             | Time:   11:00 a.m.
17 |         Defendant.         |
18 |                            | Before the Honorable Susan Illston
                                   United States District Judge

19                             **EVIDENTIARY HEARING**
20                             **REQUESTED**

**I. PRELIMINARY STATEMENT**

The day before its opposition briefs came due, the Government requested a one-week extension of time to prepare those papers. ECF No. 76. Mr. Cooper finds it difficult to credit the bases offered by the Government considering that (1) contrary to its representations, it did not reassign this case at all, and the three briefs it did file were prepared by the same prosecutors that have been responsible for this case; and (2) the Government dedicated a combined four pages of argument to respond to all four of Mr. Cooper's motions. *See* ECF Nos. 79-81.

In any case, considering the brevity of the Government's responses, Mr. Cooper, by and through his counsel, presents this omnibus reply addressing the Government's briefs *seriatim*.

**II. ARGUMENTS IN REPLY**

**A.    Mr. Cooper's Reply to ECF No. 79.**

    **1. The Government should be compelled to produce to Mr. Cooper the pen register applications and orders upon which it relies to defend its receipt of evidence.**

The Government's sole response to Mr. Cooper's Motion to Suppress the evidence obtained by wiretaps is an assertion that the Court issued an Order permitting the Government to obtain the information upon which it relied when seeking wiretap authorization. *Compare* ECF No. 72 *with* No. 79 at 2:8-14. The Government provided neither its pen register applications nor the resulting orders to Mr. Cooper. Instead, without making a motion as required by Local Rule 56-1(c), the Government provided an order purportedly issued by Magistrate Judge James—but not the application that preceded that order—to the Court *in camera*.

Mr. Cooper objects to the process employed by the Government. While *ex parte* procedures are strongly disfavored in criminal practice and should be rejected unless absolutely necessary, *see United States v. Thompson,* 827 F.2d 1254, 1258 (9th Cir. 1987), the Government didn't even bother to ask this Court to permit an *ex parte* procedure, much less provide the requisite showing under Local Rule 56-1(c). As the Commentary to Rule 56-1 makes clear:

> As a public forum, the Court has a policy of providing to the public full access to documents filed with the Court. The Court recognizes that, in some cases, the Court must consider information that, if made available to the public, would compromise the safety of persons (e.g., cooperating defendants) and/or thwart legitimate law enforcement objectives (e.g., the arrest of a defendant who poses a substantial risk of evading capture). This

rule governs requests in criminal cases to file under seal documents or things, whether pleadings, memoranda, declarations, documentary evidence or other evidence. This rule is designed to ensure that the assigned Judge receives in chambers a confidential copy of the unredacted and complete document, annotated to identify which portions are sealable, that a separate unredacted and sealed copy is maintained for appellate review, and that, where appropriate, a redacted copy is filed and available for public review with the minimum redactions necessary to protect sealable information.

Instead of complying with the local rules, the Government simply submitted the materials it claims necessary to decide Mr. Cooper's motion *in camera* and *ex parte*, and without making the necessary showing to support its approach.[1] The Government's approach is improper.

As the Ninth Circuit taught in *Thompson*:

> The right of a criminal defendant to an adversary proceeding is fundamental to our system of justice. *See Nix v. Williams,* 467 U.S. 431, 454-55 (1984) (Stevens, J., concurring in the judgment); *see also Pointer v. Texas,* 380 U.S. 400, 404-05 (1965) (discussing right of confrontation and cross-examination). This includes the right to be personally present and to be represented by counsel at critical stages during the course of the prosecution. *United States v. Wade,* 388 U.S. 218 (1967). This is not mere idle formalism. Our system is grounded on the notion that truth will most likely be served if the decision maker—judge or jury—has the benefit of forceful argument by both sides. *Herring v. New York,* 422 U.S. 853, 862 (1975). Inquisitorial proceedings, where the judge takes an active role in ferreting out the truth, may be the rule elsewhere in the world, but they are decidedly alien to our way of thinking. Our judges usually have neither the time, nor the means, nor the training to investigate facts pertaining to the cases before them. Even on matters of law, our judges must rely heavily on counsel to come up with the arguments and citations supporting their respective positions.

827 F.2d at 1258 (parallel citations omitted).

While acknowledging that there are "occasional departures from this norm" of adversarial proceedings (including considerations of whether to reveal the identity of a confidential informant), *Thompson* emphasized that "[s]ituations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such a compelling justification, *ex parte* proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process." 827 F.2d at 1258-59; *see also*

---

[1] The docket does not reflect the filing of any under seal materials subsequent to the filing of Mr. Cooper's second round of pretrial motions.

*United States v. Sineneng-Smith,* Case No. 10 Cr. 414 RMW, 2013 U.S. Dist. LEXIS 89843 (N.D. Cal.) ("Absent some extraordinary circumstance, *in camera* submissions should not be considered because they are not tested for credibility by the adversarial process.")

The Government cannot, in this circumstance, establish a compelling reason to withhold from him (and the Court) the underlying pen register applications. Nor can it support its withholding of the resulting orders from Mr. Cooper. Indeed, the Government provides its applications for pen registers and the resulting orders in discovery, without as much as a protective order. For example, in the 14-defendant "Sureno" gang case alleging RICO, VICAR, and other serious charges, the Government has produced to the defendants—without any protective order whatsoever—pen register applications underlying that prosecution. *See* Declaration of Ethan A. Balogh Filed October 31, 2014 ("Balogh Reply Decl.") ¶ 2.

Because the Government has not presented any compelling reason to withhold the pen register applications and the resulting orders from Mr. Cooper, the Court should require the Government to produce them forthwith or to foreswear reliance upon them. *See United States v. Forrester*, 616 F.3d 929, 942-43 (9th Cir. 2010). Should the Government foreswear reliance on these materials, Mr. Cooper's motion should then be granted as unopposed.

Finally, Mr. Cooper's motion expressly requested that the Government be required to produce to the defense all pen register/trap and trace device applications and orders, as relate to TT-1 through TT-3. ECF No. 73 at 3:22-4:1. The Government did not oppose this requested relief, *see* ECF No. 79, and it should thus be granted as unopposed in any event.

**2. The Government does not address its pre-wiretap monitoring of communications between Elijah Cooper and Tristan Higgins, nor does it address its unauthorized monitoring of purported text messages between Anthony Knight and Elijah Cooper.**

In his motion, Mr. Cooper identified additional concerns raised by the Government's discovery, including its unauthorized monitoring of telephone communications between Mr. Cooper and subject-target Tristan Higgins and its unauthorized monitoring of text communications between Mr. Cooper and Anthony Knight. *See* ECF No. 72 at 2:24-3:11. The Government neither addressed these concerns nor explained its conduct. *See* ECF No. 79. Mr.

Cooper respectfully contends that the Government's studied silence on these important points warrants, at a minimum, further examination by the Court. And absent a declaration by a competent witness demonstrating that these interceptions were judicially authorized pursuant to the proper showing, the Court should grant the motion to suppress and schedule a hearing to determine the breadth of the Government's unauthorized electronic monitoring to assess whether dismissal is appropriate.

**3. The Government should be required to address, through a declaration filed under penalty of perjury, whether it employed stingray technology, the Hemisphere Program, or other unauthorized electronic surveillance.**

As Mr. Cooper has noted, and as this Court is aware, there exists in this district significant questions regarding the Government's use of stingray technology, the Hemisphere Program, and other surveillance techniques without Court authorization. *See e.g.*, ECF No. 72 at 3; *see also* ECF No. 58 at 2. But the Government—while asserting that "[t]here was no 'electronic surveillance' on Mr. Cooper's phone that happened between December 29, 2012 and February 27, 2013"—omits any declaration supporting that purported fact. Even worse, the Government crafts its "declaration of fact" to avoid addressing whether, *before* December 29, 2012, it employed stingray technology, the Hemisphere Program, or other unauthorized electronic surveillance against Mr. Cooper, Knight, or the other subject-targets identified by the Government, *e.g.*, Tony Befford, Dean Atchan, Tristan Higgins, Ray Bressard, and Henry Tobias.

The Court should require the Government to address these important questions under penalty of perjury.

**4. The Government's opposition to Mr. Cooper's motion to suppress information obtained from pen registers continues to focus on semantics rather than the substance of Mr. Cooper's challenge.**

In his opening brief, Mr. Cooper provided a detailed analysis regarding the limits of *Smith v. Maryland*, 442 U.S. 735 (1979), relied on the Supreme Court's recent assessment of GPS technology in *United States v. Jones*, 132 S. Ct. 945 (2012), and explained why the "private call information" the Government obtained without a warrant violated Mr. Cooper's Fourth Amendment rights. *See* ECF No. 73.

////

In response, the Government discusses neither *Smith* nor *Jones*. So too, the Government neither acknowledges nor addresses Mr. Cooper's challenge to the Government's warrantless receipt of other "private call information." *Compare* ECF No. 73 at 3:12-20 *with* No. 79 at 2:15-3:7.

Similarly, with respect to its receipt of cell tower GPS coordinates tied to outgoing and incoming calls on the target telephones—*e.g.*, the only issue the Government addresses—rather than grapple with Judge Sentelle's and a panel of the Eleventh Circuit's determination that the Government could not obtain the private call information Mr. Cooper moves to suppress, including "the GPS coordinates of the cell tower accessed by the telephones' users at the beginning and end of each call," ECF No. 73 at 2:4-6, *see United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014), *vacated pending en banc review*, 573 Fed. Appx. 925 (11th Cir. Sep. 4, 2014), the Government offers only a block quote—without analysis—from a district court in Southern District of California. *See* ECF No. 79 at 2:24-3:5. The Government then omits the citation. *Id*.

Mr. Cooper's research suggests that the Government is referring to *United States v. Moreno-Nevarez*, 2013 WL 5631017 (S.D. Cal. 2013). In that case, "the Government filed an application pursuant to 18 U.S.C. § 2703(c) and (d) for subscriber and other information, including cell site information with th[e] [District] Court." *Id*. at *1.[2] The magistrate judge granted the application and the district court later refused to suppress the GPS tower location information the Government had obtained. The district court's ruling relied on the Third Circuit's finding that:

> The *Knotts/Karo* opinions make clear that the privacy interests at issue are confined to the interior of the home. There is no evidence in this record that historical [cell site location information (CSLI)], even when focused on cell phones that are equipped with GPS, extends to that realm.

*Id*. at *2 (*citing In the Matter of the Application of the United States for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government*, 620 F.3d 304 (3d Cir. 2010)).

---

[2]Unlike here, the Government provided its application to the defendant in that litigation.

5

As a result, those cases offer the Government little assistance because (1) the declaration presented by the Government demonstrates that the cell tower GPS coordinates in this case *include* transmissions occurring wherever the mobile telephone is located, including in the user's residence, *see* ECF No. 66,[3] (2) the Third Circuit's case issued two years before the Supreme Court offered its guidance on the reach of the Fourth Amendment and the serious privacy concerns raised by GPS monitoring in *Jones*, and (3) *Moreno-Nevarez*, and the Circuit authority it relied upon, addressed the Stored Communications Act, a statute the Government did not rely upon here; rather, it obtained this evidence via applications for pen registers. *See* ECF No. 79.[4]

The reasoning presented in *Davis* thus presents a far better assessment of the Supreme Court's jurisprudence on modern-day privacy expectations. And even the Third Circuit recognized—just as Mr. Cooper argues—that "[a] cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." 620 F.3d at 317. In other words, neither *Smith* nor *Moreno-Nevarez* can dispose of the Fourth Amendment challenge Mr. Cooper brings in this case.

So too, and most critically, the Third Circuit emphasized that, in contrast to section 2703 and the Stored Communications Act, Congress has prohibited the Government from relying on the pen register statue to obtain from a telecommunications carrier "the physical location of the subscriber[.]" 620 F.3d at 315 & n.7 (*quoting* 47 U.S.C. § 1002(a)(2)) (ellipses omitted). More directly, section 1002(a)(2) mandates that:

---

[3]To the extent that the Government asserts that somehow, a mobile telephone does *not* transmit through cell phone towers when utilized from a personal residence—a circumstance Mr. Cooper disputes—Mr. Cooper respectfully requests an evidentiary hearing at which the Government's declarant, Randall Thomson, may be examined.

[4]With respect to section 2703, at least one jurist, "Judge McMahon of the Southern District of New York[,] [has] held that CSLI is information from a tracking device under § 3117 and is therefore excluded from § 2703(c). *See In re Application of the United States for an Order Authorizing the Use of a Pen Register with Caller Identification Device Cell Site Location Auth.*, 2009 WL 159187, at *6–7 (S.D.N.Y. Jan. 13, 2009)." 620 F.3d at 310 n.6.

> with regard to information acquired solely pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of Title 18), such call-identifying information shall not include *any information that **may** disclose* the physical location of the subscriber (except to the extent that the location may be determined from the telephone number)[.]

As a result, the Government could not properly use the pen register statute to obtain this information because the cell tower GPS coordinates "may disclose the physical location of the subscriber[,]" *e.g.*, the information obtained shows whether the user is in Antioch, the Bay View district, etc., and further reflects—based on the proximity to other towers—a more precise location, and also permits the Government to track a user's movements. Or as the Eleventh Circuit summed up in *Davis*:

> The evidence obtained under the order and presented against Davis in the district court consisted of so-called 'cell site location information.' That location information includes a record of calls made by the providers' customer, in this case Davis, and reveals which cell tower carried the call to or from the customer. The cell tower in use will normally be the cell tower closest to the customer. The cell site location information will also reflect the direction of the user from the tower. It is therefore possible to extrapolate the location of the cell phone user at the time and date reflected in the call record. All parties agree that the location of the user will not be determined with pinpoint precision, but the information is sufficiently specific that the prosecutor expressly relied on it in summing up to the jury in arguing the strength of the government's case for Davis's presence at the crime scenes. Indeed, it is not overstatement to say that the prosecutor stressed that evidence and the fact that the information reflected Davis's use of cell phone towers proximate to six of the seven crime scenes at or about the time of the Hobbs Act robberies.

754 F.3d at 1210-11.[5]

Considering the nature of this evidence, either in conjunction with or even without the Congressional limits placed on the pen register statute, the Government was required to seek and obtain a warrant before it could obtain this private information. It did not, and thus suppression is warranted.[6]

---

[5]Like *Davis*, the Government will try to use the GPS information it obtained to argue that Mr. Cooper's locations on particular dates and times should be considered as evidence of guilt. Otherwise, it would simply ask that the motion be denied as moot.

[6]So too, Mr. Cooper respectfully contends that his reading regarding the limits of *Smith*, as well as *Davis*'s analysis of the Fourth Amendment privacy violation occasioned by the

(continued...)

7

The Court should thus conclude that the Government's warrantless search and seizure of the GPS coordinates of the cell towers used to connect calls on the target telephone, as well as the other private call information it obtained at the same time, violated Mr. Cooper's Fourth Amendment rights, and the Court should preclude the Government from introducing that evidence and its fruits at trial.

**B.     Mr. Cooper's Reply to ECF No. 80.**

The Government opposes Mr. Cooper's motion to dismiss count two of the superseding indictment—the conspiracy count—by asserting, in sum and substance, that this Court's reasoning and resulting Order regarding the initial indictment's conspiracy count is wrong and may be disregarded. *Compare* ECF No. 65 at 5-7 *with* ECF No. 80. In contrast, Mr. Cooper contends that the Court's analysis is not only correct, but also the law of the case. Considering the Government's steadfast refusal to accept and abide this Court's determination that more detail is required in this case, the Court should dismiss count two with prejudice.

**C.     Mr. Cooper's Reply to ECF No. 81.**

**1.     The Court should order a bill of particulars.**

Should count two survive, the Court should order a bill of particulars and require the Government to identify all alleged co-conspirators *known* to the grand jury, as well as additional particulars, *e.g.*, identifying the acts Mr. Cooper and his alleged co-conspirators took, when they allegedly undertook those acts, and the particular circumstances that support the alleged conspiracy's end date. The Government's opposition asserts only that Mr. Cooper is not "entitled to a bill of particulars." ECF No. 81 at 1:22. But that's not the question. The question is whether this Court should exercise its broad discretion to require the Government to notify Mr. Cooper of the precise nature of the charges against him, to ensure sufficient detail so that he may later claim double jeopardy, to "minimiz[e] the danger of surprise at trial[,]" and to ensure his

---

[6](...continued)
warrantless search and seizure of cell tower GPS coordinates, is more persuasive than the Fifth Circuit's contrary assessment in *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013).

opportunity to prepare his defense. *United States v. Robertson*, 15 F.3d 862, 873 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995).

The Government offers no argument why the Court should not exercise its discretion in this way. The Court should thus grant Mr. Cooper's motion.

### 2. The Court should grant all of the discovery relief requested by Mr. Cooper because the Government has not opposed it.

Mr. Cooper moved for discovery relief, including the entry of an order (1) barring the Government from introducing any Rule 16 discovery, including any co-conspirator statements, not produced as of July 31, 2014, (2) requiring the Government to specifically identify, from discovery produced, the alleged co-conspirator statements it will seek to introduce at trial, and (3) directing the Government to produce a summary of evidence the Government will seek to introduce pursuant to Federal Rule of Evidence 404(b). *See* ECF No. 71.

The Government does not oppose this motion. *See* ECF No. 81. The Court should thus grant it as unopposed.

### III. CONCLUSION

Based on the foregoing, as well as the arguments presented in his opening briefs, Elijah Cooper respectfully asks the Court to issue an Order granting the motions presented in ECF Nos. 70-73.

Respectfully submitted,

DATED: October 31, 2014　　　　COLEMAN, BALOGH & SCOTT LLP

　　　　　　　　　　　　　　　　　　*/s/ E A Balogh*
　　　　　　　　　　　　　　　By: ETHAN A. BALOGH
　　　　　　　　　　　　　　　235 Montgomery Street, Suite 1070
　　　　　　　　　　　　　　　San Francisco, CA 94104
　　　　　　　　　　　　　　　Direct: (415) 391-0441

　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　ELIJAH COOPER

**PROOF OF SERVICE**

I, Ethan A. Balogh, certify that on October 31, 2014, I served all parties in this matter by causing the preceding pleading to be filed electronically, as set forth by Local Rule 5-1.

Dated: October 31, 2014

*/s/ E A Balogh*
ETHAN A. BALOGH