UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>ELIJAH COOPER,<br>　　　　Defendant. | Case No. 13-cr-00693-SI-1<br><br>**ORDER RE: SEPTEMBER 26, 2014 MOTIONS**<br>Re: Dkt. Nos. 70-73, 84 |

On November 12, 2014, the Court held a hearing on various motions brought by defendant. Having considered the arguments of counsel and the papers submitted, the Court hereby rules as follows.

## BACKGROUND

On February 5, 2013, a confidential human source ("CHS"), working with the FBI, engaged in a controlled narcotics purchase with suspect Anthony Knight. Declaration of Ethan A. Balogh ("Balogh Decl.") Ex. B. While the CHS was discussing the terms of the buy with Knight, a white Mercedes pulled into the parking lot and Knight went to meet with the driver of the Mercedes. *Id.* The Mercedes then drove away again. *Id.* Knight then got into the CHS's car, gave the CHS an ounce of crack cocaine, and told the CHS that Knight's supplier had to go back and get the remainder of the drugs. *Id.* When the Mercedes returned to the parking lot, Knight went to meet with the Mercedes's driver again, and then gave the CHS the remainder of the drugs the CHS had paid for. *Id.*

The FBI sought to ascertain who had been driving the white Mercedes. A query to the California Department of Motor Vehicles, based upon the car's license plate number, revealed that

1   the car was registered to a Johnny Ray Trammell. *Id.* Ex. H ¶ 64 n.11. The CHS was shown a
2   photo of Trammell, but the CHS said that the driver of the Mercedes was younger looking. with
3   close cropped hair. *Id.* ¶ 71. The CHS was then shown a photo of Tony Befford; the CHS
4   identified Befford as the driver. *Id.*

5   Agents then tried to verify the CHS's identification of the driver as Befford. *Id.* ¶ 72. The
6   agents conducted further surveillance of the white Mercedes, but concluded that the driver was not
7   Befford. *Id.* The agents then asked the San Francisco Police Department ("SFPD") to conduct a
8   traffic stop to determine who the driver was. *Id.* The SFPD complied, and identified the driver as
9   defendant Elijah Cooper. *Id.* Cooper was wearing a royal blue hooded sweatshirt when the SFPD
10  conducted the traffic stop. *Id.*

11  On February 6, 2013, federal agents asked CHS about the misidentification of Cooper as
12  Befford. *Id.* ¶ 73. The CHS was then shown a photo of Cooper; the CHS identified Cooper as the
13  driver of the white Mercedes. *Id.* The CHS stated that, during the controlled buy, Cooper's hair
14  was "a bit longer" than depicted in the photo. *Id.* Ex. D. One agent asked the CHS what the
15  driver had been wearing during the controlled drug buy. *Id.* Ex. H. ¶ 73. The CHS responded that
16  the driver of the white Mercedes had been wearing a "royal blue hoodie." *Id.*

17  On February 21, 2013, the government sought a wiretap for Knight's telephone, and
18  named several individuals, including Cooper, as target subjects for surveillance. *Id.* Ex. G, at 2.
19  On April 4, 2013, the government sought two more wiretaps, one of which was for Cooper's
20  mobile phone. *Id.* Ex. L.

21  The FBI agents were aware that Cooper, at that time, was serving a term of supervised
22  release for a prior narcotics trafficking conviction. Declaration of Jacob D. Millspaugh
23  ("Millspaugh Decl.") ¶ 2. The agents decided not to contact Cooper directly because they
24  believed that the contact would be noticed and Cooper would be considered a snitch, and thereby
25  placed in danger. *Id.* Therefore, the agents decided to contact Cooper's probation officer, Octavio
26  Magaña, to see if he could help arrange a meeting. *Id.*

27  On August 16, 2013, FBI agents, SFPD officers, and an Assistant U.S. Attorney
28  ("AUSA") went to Mr. Magaña's office to meet with Cooper. *Id.* ¶ 3. After Cooper arrived and

learned who all the individuals were, Cooper was advised that they had evidence he was engaged in drug dealing, and that it was in his interest to cooperate with them. *Id.* Cooper was not questioned about the crimes under investigation; rather, he was told about some of the evidence against him. *Id.*

On September 26, 2013, following weeks in which Cooper never responded regarding his willingness to cooperate, agents swore out a criminal complaint against Cooper for distribution of cocaine base and conspiracy to distribute. *Id.* ¶ 5. On October 4, 2013, the FBI agents, SFPD officers, and an AUSA, again went to Mr. Magaña's office to meet with Cooper. *Id.* ¶ 6. The AUSA asked Cooper if he had considered what had been discussed at the August, 2013 meeting. *Id.* Cooper stated that he wanted to see a lawyer. *Id.* He was immediately arrested. *Id.*

Two SFPD officers then transported Cooper to the San Francisco Hall of Justice for post-arrest processing. *Id.* ¶ 7. According to Cooper, he was placed in an interrogation room, shown photos of men from his neighborhood, and asked questions about the activities of those men. Declaration of Elijah Cooper ("Cooper Decl.") ¶ 6. Cooper declined to answer any questions. *Id.* Because Cooper was arrested after the Friday morning magistrate calendar had already concluded, Cooper was lodged at the San Francisco County Jail until he could be arraigned on the following Monday. Millspaugh Decl. ¶ 7.

On October 17, 2013, the grand jury returned a two-count indictment against Cooper, charging him with: (1) distribution of cocaine base, in violation of 21 U.S.C. §§ 841 (a)(1), 841 (b)(1)(B)(iii); and (2) conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846. On July 31, 2014, this Court ruled on eight of motions filed by defendant. Docket No. 65. Therein, the Court granted defendant's motion to dismiss Count Two of the indictment. *Id.* at 7. On August 28, 2014, the grand jury returned a superseding indictment, charging the same two counts as the original indictment. Docket No. 67. Now before the Court are the following motions: (1) motion to dismiss Count Two of the superseding indictment, (2) motion for bill of particulars and other discovery relief, (3) motion to suppress evidence obtained by pen registers and trap and trace devices, (4) motion to suppress evidence obtained by wiretaps, and (5) motion to file certain documents under seal. Docket Nos. 70-73.

**DISCUSSION**

**I. Motion to Dismiss Count Two of the Superseding Indictment**

Cooper moves to dismiss Count Two of the superseding indictment in the instant case, arguing that it is too lacking in factual detail to support the charges against him.

Federal Rule of Criminal Procedure 7(c) provides that an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." In the Ninth Circuit, an indictment is usually sufficient if it sets forth the elements of the offenses charged. *United States v. Fernandez*, 388 F.3d 1199, 1200 (9th Cir. 2004); *see also United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("In the Ninth Circuit the use of a 'bare bones' information – that is one employing the statutory language alone – is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.") (alteration, citation, and internal quotation marks omitted)). In considering a motion to dismiss an indictment, the Court may not look beyond "the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment is sufficient to withstand a defendant's motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted).

In its previous order, the Court found Count Two of the original indictment to be insufficiently plead because it failed to provide "the substantial safeguards to criminal defendants that indictments are designed to guarantee." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam) (citation and internal quotation marks omitted). Specifically, the Court found that the indictment failed to provide sufficient detail regarding (1) when the conspiracy took place because the time frame was essentially open-ended in both directions, (2) the identity of the alleged coconspirators, and (3) facts regarding what they were alleged to have done. Docket No. 65 at 6. The government has attempted to cure the first of these flaws in the superseding

indictment, Docket No. 67 ("From on or about February 4, 2013…"), *cf.* Docket No. 1 ("Beginning on an unknown date but no later than February 4, 2013…"), but otherwise essentially parrots the language of the original indictment. The government's failure to cure the second and third flaws renders the indictment devoid of "a few basic factual allegations [to] accord[] defendant[] adequate notice of the charges against [him] and assure[] [him] that [his] prosecution will proceed on the basis of facts presented to the grand jury" as required by controlling precedent in this Circuit. *Cecil* 608 F.2d at 1297. Accordingly, the Court GRANTS defendant's motion to dismiss Count Two of the superseding indictment.

## II. Motion for Bill of Particulars

Cooper next moves for a Bill of Particulars and other assorted discovery relief. Because these issues bear particularly on the conspiracy charge, the Court DENIES the motion at this time, without prejudice to a renewal should the government choose to supersede the indictment.

## III. Motions to Suppress Evidence Obtained Through Pen Registers, Trap and Trace Devices, and Wiretaps

Cooper moves to suppress evidence obtained through pen registers, trap and trace devices, and wiretaps. In its earlier order addressing this issue, the Court noted that the parties presented substantially different accounts premised on highly conflicting information, and that there was some confusion amongst the parties as to what was actually collected through this monitoring process. Docket No. 65 at 25. The Court therefore ordered additional briefing on the issue, specifically requesting that the parties explain (1) what information was collected, (2) how it was collected, and include (3) attached exhibits containing the actual evidence collected. *Id.* The government has since filed a declaration from a Metro PCS employee which describes the information the government collected. The information which the government terms "pen register data" in the case at bar includes the "incoming call number, outgoing call number, duration of call, call date, time call began, [and] time call ended." Docket No. 66, Thompson Decl. ¶ 3. In addition, the data indicates the geographic coordinates (longitude and latitude) of the cell tower used when the call was initiated, and the tower used at the conclusion of the call ("cell site data"). *Id.*

In a footnote in its opposition brief, the government notes that a copy of a magistrate order authorizing the collection of pen register data has been provided to the Court for *in camera* review. Docket No. 79 at 1 nt. 1. On November 4, 2014, four days after Cooper's reply brief, and eleven days after the government's opposition, the government filed a motion explaining that on October 24, 2014 "[a]s an exhibit to [our opposition brief] the government attempted to file an application and order issued by the Honorable Maria Elena James on February 27, 2013. That application and Judge James' order are under seal and have been since their issuance. The government attempted to file the exhibit manually and under seal. The Clerk of the Court would not accept the filing." Docket No. 84 at 1. The motion proceeds to ask the Court for permission to file the exhibit under seal. *Id.* at 2. To date, the Court has received an unfiled copy of the government's application, but not the magistrate's order.

The Court finds that it is currently unable to rule on these motions for two reasons. First, there is a significant asymmetry of information between the parties which has heretofore prevented a robust adversarial exchange and meaningful briefing on the defendant's suppression motions. This asymmetry of information stems from the government's refusal to provide Cooper with the applications and orders conferring judicial authorization to obtain pen register, trap and trace, and cell site data. This has led to confusion as to the specific statutory provisions the government relied upon to conduct its various forms of surveillance. Second, the government has simply failed to respond to many of Cooper's substantive arguments.

The Court therefore ORDERS the following:

1. The government shall provide Cooper with a copy of *all* applications and orders related to obtaining pen register, trap and trace, and cell site data.[1] To the extent the government is concerned about the proprietary or confidential nature of the contents of these documents, it may enter into a protective order with Cooper to govern their use.

2. The government shall provide the Court with a copy of *all* applications and orders related to obtaining pen register, trap and trace, and cell site data.

---

[1] This includes phones TT-1, TT-2, and TT-3.

3. The Court orders additional briefing, in which the government shall explain precisely which statutory provisions the government relied upon to obtain trap and trace, pen register, and cell cite information, specifying whether the information was obtained on a prospective or retrospective basis.

4. In its brief, the government shall also respond to all of Cooper's arguments and allegations, namely: (a) whether the government used so-called "stingray" or "hemisphere" technology to monitor Cooper; (b) the appropriate showing the government must make to obtain historical cell cite data; (c) the appropriate showing the government must make to obtain prospective cell cite data; (d) Cooper's contention that special agent May's reference to a text message sent by Knight to Cooper on February 5, 2014 is unsupported by the pen register materials the government has provided; (e) Cooper's contention that the government was wiretapping TT-3 before it was judicially authorized to do so; and (f) Cooper's contention that the government was in possession of pen register, trap and trace, and cell site information before it received judicial authorization to obtain such information.

5. The government's sealing request fails to comply with Local Rule 56-1 which requires, among other things, that the designating party make a showing of why the documents are sealable, and that redactions are narrowly tailored. It is therefore DENIED.

## CONCLUSION

This order resolves Docket Nos. 70, 71, and 84. The Court will rule on Docket Nos. 72 and 73 pending further briefing by the parties.

**IT IS SO ORDERED**.

Dated: November 12, 2014

SUSAN ILLSTON
United States District Judge